NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

---

S.S. o/b/o N.S., Minor Child,

           Plaintiff,

v.

BRICK TOWNSHIP SCHOOL DISTRICT
BOARD OF EDUCATION, *et al.*,

           Defendants.

Civ. Action No. 14-6607-BRM-LHG

**OPINION**

---

**MARTINOTTI, DISTRICT JUDGE**

    Before this Court is a Motion to Allow Additional Evidence filed by Plaintiff S.S. on behalf of N.S. ("Plaintiffs"). (ECF No. 101.) Defendants Brick Township School District Board of Education (the "Board"), Susan Russell ("Russell"), Walter Uszenski ("Uszenski"), and Andrew J. Morgan ("Morgan") (collectively, "Defendants") oppose the motion. (ECF Nos. 105 & 106.)[1] Pursuant to Federal Rule of Civil Procedure 78(b), the Court did not hear oral argument. For the reasons set forth herein, Plaintiffs' Motion to Allow Additional Evidence is **GRANTED IN PART** and **DENIED IN PART**.

    **I.    BACKGROUND**

    The underlying facts are set forth at length in the July 29, 2014 Opinion of the Honorable Robert Bingham II, A.L.J. (the "ALJ") (ECF No. 105-2), from which Plaintiffs appeal. In the

---

[1] Defendants submitted joint opposition to the motion (ECF No. 105), while separate counsel submitted opposition concerning issues related to Morgan's criminal history and Uszenski's and Morgan's arrest. (ECF No. 106).

interest of judicial economy, the Court refers the parties to that Opinion for a full recitation of the factual background of this dispute. The Court draws additional facts from Plaintiffs' Amended Complaint. (ECF No. 44.)

S.S. is the parent of N.S., who was seventeen at the time of the ALJ's decision, and who is autistic and has been classified as a child with a disability who qualifies for special education services pursuant to the Individuals with Disabilities Education Act ("IDEA"). (ECF No. 105-2 at 3; ECF No. 44 ¶¶ 1, 6.) Uszenski is the District's Superintendent of Schools; Morgan is the District's former Interim Director of Special Services; and Russell is the District's current Director of Special Services. (ECF No. 44 ¶¶ 9-11.) During the 2012-13 school year, N.S. was a ninth-grade student at Brick Memorial High School ("BMHS") in Brick Township, New Jersey (the "District"). (ECF No. 105-2 at 3.) N.S.'s May 31, 2012 Individualized Education Program ("IEP") provided he would attend a "self[-]contained LLD-M (Learning Language Disability-Mild) class." (ECF No. 44 ¶ 18.) S.S. claims the District provided her a different IEP, dated October 9, 2012, which included different goals and objectives. (*Id.* ¶ 20.) S.S. alleges the ALJ refused to consider the October 9, 2012 IEP and would not take testimony regarding the document. (*Id.*)

On November 30, 2012, S.S. attended a 60-day review meeting regarding the IEP, but she left before the meeting began due to a disagreement with N.S.'s teacher. (*Id.* ¶ 22.) S.S. alleges, at that meeting, after she left, the District drafted and implemented a different IEP, dated November 30, 2012, without her presence or consent. (*Id.* ¶ 23.) S.S. contends the District's implementation of the November 30, 2012 IEP disregarded the provisions of the October 9, 2012 IEP and violates New Jersey education law. (*Id.* ¶ 24.) S.S. claims the November 30, 2012 IEP "contained different and more challenging high school level unattainable goals and objectives compared to [N.S.'s] May 31, 2012 IEP. (*Id.* ¶ 36.) She further alleges the District failed to provide N.S. with a personal

aide. (*Id.* ¶ 38.) S.S. contends the District's implementation of the November 30, 2012 IEP, which was too challenging for N.S., led N.S. to receive failing grades in all of his subjects in 2012-13 after he had passed all his classes the prior year. (*Id.* ¶ 39.) S.S. claims the District agreed teachers would assess N.S. with written narratives rather than grades, but she never saw the narratives. (*Id.* ¶¶ 40-41.) S.S. alleges the ALJ denied her request that the District provide her with the narratives. (*Id.* ¶ 41.)

S.S. alleges, at a May 28, 2013 IEP meeting, the District changed N.S.'s placement from a program for students with mild disabilities to one for students with severe disabilities. (*Id.* ¶ 55.) She claims the District did not inform her of her right to accept or challenge the May 28, 2013 IEP. (*Id.* ¶ 56.) The ALJ determined the District tried to accommodate S.S. by rescheduling the meeting twice at her request, but S.S. cancelled both times. (ECF No. 105-2 at 56.)

S.S. contends the change to N.S.'s instruction pursuant to the May 28, 2013 IEP led him to receive only one hour of functional academics each day, and he did not receive any core curriculum instruction. (ECF No. 1 ¶ 60.) S.S. filed an emergent motion before an Administrative Law Judge[2] to have N.S. placed in the mild disability program. (*Id.* ¶ 62.) The motion was granted. (*Id.* ¶ 65.)

S.S. sought a due process hearing, which the ALJ held in May 2014. (*Id.* ¶¶ 67, 190.) The ALJ heard testimony on behalf of S.S. and N.S. from a pediatric neuropsychologist. (*Id.* ¶¶ 68-71.) S.S. also presented testimony from N.S.'s reading specialist and speech therapist. (*Id.* ¶¶ 73, 75.) The ALJ did not allow S.S. to introduce evidence that purported to show N.S. had been successful in middle school in a program for students with mild disabilities. (*Id.* ¶ 76.) The ALJ held the District did not deny N.S. a free appropriate public education ("FAPE") in the least restrictive

---

[2] The Amended Complaint refers to the Administrative Law Judge who heard S.S.'s emergent motion as Judge Kerins, but does not identify her by her full name. (ECF No. 44 ¶ 62.) Judge Kerins later recused herself from the matter. (*Id.* ¶ 63.)

environment ("LRE"), despite finding the District committed several procedural errors. (*Id.* ¶¶ 86-88; ECF No. 105-2.) S.S., having exhausted her administrative remedies filed her Complaint in this case. (ECF No. 1.) She later filed the Amended Complaint. (ECF No. 44.)

## II.  LEGAL STANDARD

The IDEA permits a party aggrieved by an administrative order to bring a civil action appealing that decision. *See* 20 U.S.C. § 1415(i)(2)(A). The District Court reviewing the ALJ's decision applies "modified *de novo* review, giving 'due weight' to the underlying administrative proceedings." *S.H. v. State-Operated Sch. Dist. of City of Newark*, 336 F.3d 260, 270 (3d Cir. 2003). The IDEA permits the District Court to consider additional evidence not presented below, *D.B. v. Ocean Township Bd. of Educ.*, 985 F. Supp. 457, 500 (D.N.J. 1997); 20 U.S.C. § 1415(i)(2)(B)(ii), but "due weight" should be given to the ALJ's ruling. *Hendrick Hudson Ctrl. Schl. Dist. v. Rowley*, 458 U.S. 176, 205-06 (1982); *Carlisle Area School v. Scott P.*, 62 F.3d 520, 529 (3d Cir. 1995). If the District Court does not adhere to the ALJ's factual findings, it must explain its rationale for so doing. *Carlisle*, 62 F.3d at 529. The District Court's review over questions of law and the ALJ's application of legal precepts is plenary. *Id.* at 528, n.3; *D.B.*, 985 F. Supp. at 500. The District Court may not "substitute[e] its own notions of sound educational policy for those of the agency it reviews." *S.H.*, 336 F.3d at 270.

Pursuant to 20 U.S.C. § 1415(i)(2), the District Court "(i) shall receive the records of the administrative proceedings; (ii) shall hear additional evidence at the request of a party; and (iii) basing its decision on the preponderance of the evidence, shall grant such relief as the court determines is appropriate." "[The] District Court must accept the state agency's credibility determinations 'unless the non-testimonial, extrinsic evidence in the record would *justify* a

4

contrary conclusion.'" *Shore Reg'l High Sch. Bd. of Educ. v. P.S. ex rel. P.S.*, 381 F.3d 194, 199 (3d Cir. 2004) (quoting *Carlisle Area Sch.*, 62 F.3d at 529).

**III. DECISION**

S.S. asks this Court to consider fifty (50) exhibits (Certif. of Julie Warshaw, Esq. in Supp. of Pls.' Mot. to Allow Additional Evid. (ECF No. 104), Exs. 1-50), which she argues were unknown to her at the Due Process Hearing, or were improperly excluded by the ALJ. (Br. in Supp. of Pls. Mot. to Allow Additional Evid. (ECF No. 101-2) at 11.) The Court considers these exhibits in turn.

**A. Plaintiffs' Submission of Evidence That Was Not Before the ALJ**

**1. Exhibits 1 to 3 and 6 to 7**

S.S. argues, and Defendants do not dispute, the ALJ did not permit S.S. to submit the October 9, 2012 IEP because Defendants claimed at the hearing they had never seen the document. (ECF No. 104 ¶¶ 9.) She contends the October 9, 2012 IEP provided substantially more services to N.S. than the November 30, 2012 IEP, which was implemented. (*Id.*) She claims the existence of the October 9, 2012 IEP, which Defendants denied, would have allowed her to call Defendants' credibility into question. (*Id.*) Defendants argue the evidence related to the October 9, 2012 IEP is irrelevant, because the ALJ compared the November 20, 2012 IEP to the May 31, 2012 IEP and concluded the November 30, 2012 IEP "added program goals but did not actually change N.S.'s individual goals and objectives, though the wording was different." (ECF No. 105 at 7 (citing ECF No. 105-2 at 55).)

The Court finds the evidence related to the October 9, 2012 IEP as compared to the May 31, 2012 IEP and the November 30, 2012 IEP (ECF No. 104, Exs. 1-3, 6-7) should be admitted. *See Susan N. v. Wilson Sch. Dist.*, 70 F.3d 751, 760 (3d Cir. 1995) (finding a court should consider

additional evidence in that is "relevant, non-cumulative, and useful in determining whether Congress' goal [in the IDEA] has been reached for the child involved"). Although the ALJ considered evidence and testimony regarding the adequacy of the November 20, 2012 IEP as compared to the May 31, 2012 IEP, the ALJ did not consider the October 9, 2012 IEP. (ECF No. 105-2 at 55, 64-65.) The October 9, 2012 IEP called for additional instruction and services, including a social skills group and counseling, which N.S. did not receive. (*Id.*) The Court finds Exhibits 1 to 3 and 6 to 7 would have provided the ALJ with a broader basis to analyze the November 30, 2012 IEP and determine whether the District provided a FAPE. *Susan N.*, 70 F. 3d at 759.

### 2. Exhibits 4 and 5

S.S. argues the Court should consider a July 13, 2012 Supplemental Instruction PLEP (Present Level of Education Performance), which she maintains "shows that N.S. worked well, he was learning, and that he was social." (ECF No. 104 ¶ 7, Ex. 4.) She also asks the Court to consider two reports from N.S.'s home instructor, which the ALJ did not permit to be entered into evidence. (ECF No. 104 ¶ 8, Ex. 5.) S.S. argues the reports would have provided the ALJ with evidence of N.S.'s needs and would have demonstrated the District was wrong to eliminate supplemental instruction. (ECF No. 104 ¶ 8.) Defendants argue S.S.'s description of Exhibit 4's purpose is "broad and vague." (ECF No. 105 at 8.) They contend Exhibit 5 would be cumulative, as the ALJ considered substantial evidence regarding the District's elimination of supplemental instruction and concluded it did not adversely impact N.S. (ECF No. 105 at 9 (citing ECF N. 105-2 at 55-56).)

The Court finds S.S. has not demonstrated Exhibits 4 and 5 would be non-cumulative. Exhibit 4 consists of a one-page assessment of N.S.'s work at home and would not provide the ALJ with substantial information. As Defendants demonstrate, the ALJ considered the elimination

6

of supplemental instruction. (ECF No. 105-2 at 55-56.) Therefore, the Court will not consider Exhibits 4 and 5.

### 3. Exhibit 8

S.S. argues the Court should consider two narratives written by N.S.'s teachers to assess his progress at the end of the 2012-13 school year. (ECF No. 104, Ex. 8.) She contends the narratives show the district was aware N.S. had not progressed throughout the school year and was not passing his classes. (*Id.* ¶ 12.) In light of the fact this evidence was not made available to Plaintiffs until after the ALJ issued his decision, the Court will consider Exhibit 8.

### 4. Exhibits 9 and 10

S.S. also seeks to admit emails between S.S. and members of the District regarding N.S.'s placement in vocational programs, as opposed to life skills programs. (ECF No. 104, Exs. 9-10.) She argues the emails would have shown the District's failure to meet N.S.'s needs through its failure to conduct a vocational evaluation. (*Id.* ¶¶ 13-14.) Defendants argue the evidence would be cumulative, as S.S. testified before the ALJ that N.S. had "mastered life skills" and needed vocational instruction. (ECF No. 105 at 10 (citing ECF No. 105-2 at 40, 44-45).)

The Court finds Exhibits 9 and 10 would be cumulative, as the ALJ heard substantial testimony regarding N.S.'s experience and ability regarding life skills. (ECF No. 105-2 at 40, 44-45.) *See Burlington v. Dep't of Educ.*, 736 F.2d 773, 790-91 (1st Cir. 1984) (finding additional evidence should not be permitted to repeat or embellish testimony a witness has already offered). Therefore, the Court will not consider Exhibits 9 and 10.

### 5. Exhibit 11

S.S. claims the Court should consider a report concerning the differences between the programs and IEPs in the District and those in the Vermont school district where N.S. attended

school after Plaintiffs moved to that state. (ECF No. 104, Ex. 11.) Defendants argue this evidence is irrelevant, as the programs N.S. enrolled in after the period the ALJ reviewed has no bearing on whether the District provided a FAPE. (ECF No. 105 at 10 (citing *Bernardsville Bd. of Educ. v. J.H.*, 42 F.3d 149, 161 (3d Cir. 1994)).)

The Court agrees with Defendants. In *Bernardsville*, the Third Circuit affirmed the District Court's decision to deny the admission of an IEP that had been developed for the student after the period the ALJ considered. 42 F.3d at 161. Here, the content of N.S.'s instructional programs after he left the district do not change the analysis of whether the District provided a FAPE. Therefore, the Court will not consider Exhibit 11.

### 6. Exhibit 12

S.S. seeks admission of a February 8, 2013 email from N.S.'s teacher, Nicole Pannucci, regarding content to be covered in class. (ECF No. 104, Ex. 12.) In the email, Pannucci states the class is "moving onto [sic] a new unit in Science . . . Classifying Animals . . . this is not a goal within [N.S.'s] IEP but it is listed on the new goals that were written." (*Id.*) S.S. argues the email shows Pannucci "knew what N.S.'s goals and objectives were and that they had been rewritten." (*Id.* ¶ 16.) She contends the email "confirms [Pannucci's] testimony that the November 30, 2012 IEP was implemented." (*Id.*) Defendants argue this evidence is cumulative, as the ALJ's decision includes three pages summarizing Pannucci's testimony. (ECF No. 105 at 11 (citing 105-2 at 17-20).)

The Court finds the email would be cumulative and should not be considered. The ALJ recounted Pannucci's testimony, including her statement that "she used the November [30,] 2012 IEP through the end of the 2012-13 school year." (ECF No. 105-2 at 18.) The Court cannot discern

what value the February 8, 2013 email would add. Therefore, the Court will not consider Exhibit 12.

### 7. Exhibit 13

S.S. asks the Court to consider a December 4, 2012 email from S.S. to N.S.'s case manager concerning the fact N.S. had not participated in physical education for the entire school year. (ECF No. 104, Ex. 13.) S.S. claims the email shows the District failed to provide N.S. with physical education and therefore demonstrates N.S. did not receive a FAPE. (*Id.* ¶ 17.)

S.S. does not explain why she did not seek to have the ALJ admit the December 4, 2012 email into evidence, given the fact S.S. drafted it well before the hearing. *See Susan N.*, 70 F.3d at 762 (finding the court can "exclude evidence that could have been available when the school district made its decision"). Therefore, the Court will not consider Exhibit 13.

### 8. Exhibits 14 and 15

S.S. asks the Court to consider two emails sent among District employees, including Pannucci and N.S.'s case manager, in which they consider meeting to discuss N.S. without S.S. present. (ECF No. 104, Exs. 14-15.) S.S. argues the emails show the District excluded her from the process of developing N.S.'s IEP. (*Id.* ¶ 18.) Defendants argue the emails are cumulative, as the ALJ heard substantial testimony regarding S.S.'s participation, or lack of participation, in IEP meetings. (ECF No. 105 at 12 (citing (ECF No. 105-2 at 56).) In particular, S.S. testified she attended an IEP meeting on November 30, 2012. (ECF No. 105-2 at 41.) The ALJ also noted S.S. attended a meeting in April 13 to discuss the May 2013 IEP. (*Id.* at 56.) The ALJ also remarked S.S. "chose not to attend [a May 2013 IEP meeting], though it would have been possible." (*Id.*)

The Court finds the ALJ heard substantial testimony and evidence regarding S.S.'s attendance of IEP meetings. Therefore, Exhibits 14 and 15 would be cumulative and the Court will not consider them.

### 9. Exhibits 16 to 19

S.S. argues the Court should consider several emails she claims demonstrate the District knew N.S. was failing his classes. (ECF No. 104, Exs. 16-19.) S.S. sent the emails to District employees between September 7, 2012, and February 27, 2013, expressing concern about N.S.'s grades and overall performance. (*Id.*) S.S. contends the emails show she believed the October 9, 2012 IEP had been adopted and that she was not aware the November 30, 2012 IEP had been implemented instead. (*Id.* ¶ 19.)

The Court again finds this evidence is cumulative. The ALJ noted in his opinion that S.S. "had three to five meetings between December 2012 and March 2013 with [District employees] to discuss and plan N.S.'s ongoing education." (ECF No. 105-2 at 41.) The meetings took place during the same period S.S. sent the emails in Exhibits 16 to 19, and the ALJ was clearly aware S.S. conveyed her concerns to the District. Therefore, the Court will not consider Exhibits 16 to 19.

### 10. Exhibit 20

S.S. contends the Court should consider letters from teachers at a summer program N.S. attended in Toms River, New Jersey in 2014. (ECF No. 104, Ex. 20.) She argues the letters show the District's assessment of N.S.'s abilities was inaccurate, and that the ALJ did not have a proper understanding of N.S.'s academic potential. (*Id.* ¶ 20.) Defendants argue the evidence is irrelevant because N.S.'s performance at the summer program "bears absolutely no relation to the public education provided by the District." (ECF No. 105 at 13.)

The Court finds the assessments from the summer program instructors should not be considered for the same reasons the Court declined to consider Exhibit 11. *See Bernardsville*, 42 F.3d at 161. The ALJ reviewed the District's provision of a FAPE through the 2014 school year. (ECF No. 105-2 at 80.) Therefore, N.H.'s performance after that period is not relevant, and the Court will not consider Exhibit 20.

### B. Plaintiffs' Submission of Evidence That the ALJ Declined to Consider

#### 1. Exhibits 21 and 22

S.S. argues the Court should consider two diagnostic reading assessments, which she maintains offer contradictory assessments of N.S.'s reading level. (ECF No. 104, Exs. 21-22.) The District's April 23, 2013 assessment stated N.S. could read at a third-grade level. (*Id.*, Ex. 21.) However, N.S.'s supplemental reading specialist reported on May 28, 2013, that N.S. could read at a fifth-grade level. (*Id.*, Ex. 22.) S.S. argues this discrepancy demonstrated N.S. benefitted from individual instruction, which the district did not provide. (*Id.* ¶ 23.)

The Court notes S.S. acknowledges N.S.'s supplemental reading specialist testified regarding her assessment of N.S. (*Id.*) The ALJ considered this testimony and noted the specialist testified "that N.S. would benefit from a speech class to work one-on-one with enunciation of his words." (ECF No. 105-2 at 31-32.) Although S.S. contends the assessments themselves were not admitted into evidence, she fails to explain how, if at all, the admission of the assessments would have led the ALJ to reach a different conclusion. The Court finds Exhibits 21 and 22 would be cumulative and will therefore not consider them.

#### 2. Exhibits 23 to 25

S.S. asks the Court to consider an independent speech evaluation, an independent educational evaluation, and an expert report. (ECF No. 104, Exs. 23-25.) She contends the District

should have considered the independent speech and educational evaluations in the preparation of N.S.'s IEPs, but failed to do so. (*Id.* ¶ 24.)

The Court finds Exhibits 23 to 25 would be cumulative and/or irrelevant. S.S. argues the District's failure to consider the evaluations was improper because "[b]y failing to consider these independent expert reports, the [District] denied N.S. [a] FAPE." (Pls. Reply Br. in Supp. of the Mot. to Allow Additional Evid. (ECF No. 108) at 12-13.) This conclusory explanation does not sufficiently convey how consideration of the evaluations "would assist the [C]ourt in ascertaining whether Congress' goal has been and is being reached for the child involved." *Susan N.*, 70 F.3d at 760. As to the expert report, the ALJ's opinion includes more than four pages summarizing S.S.'s expert's testimony. (ECF No. 105-2 at 45-49.) S.S. fails to demonstrate how the admission of the expert report would not be cumulative. Therefore, the Court will not consider Exhibits 23 to 25.

### 3. Exhibits 26 and 27

S.S. seeks admission of letters from N.S.'s psychiatrist and a report from his pediatrician, which she argues show the District caused N.S. to experience anxiety by failing to provide suitable programs. (ECF No. 104, Exs. 26-27.) Defendants argue Plaintiffs have not addressed how this evidence is relevant. (ECF No. 105 at 14.)

The Court finds Exhibits 26 and 27 are relevant insofar as both support S.S.'s contention that the changes to N.S.'s instruction affected him adversely. N.S.'s psychiatrist noted in a November 20, 2013 letter that changes to N.S.'s instruction had led him to experience anxiety. (ECF No. 104, Ex. 26.) The letter expressly states the District is not complying with N.S.'s IEP. (*Id.*) As the Court finds Exhibits 26 and 27 are relevant to its evaluation of the ALJ's decision, the Court will consider those exhibits.

#### 4. Exhibits 28 to 31

S.S. maintains the Court should consider a June 16, 2014 email S.S. sent to the District requesting N.S.'s school-issued iPad to be returned for the summer (*id.*, Ex. 28), as well as several documents purporting to show N.S.'s successes (1) at his new school in Vermont (*id.*, Ex. 29), (2) at a program in which N.S. worked full time at a hospital (*id.*, Ex. 30), and (3) while participating in activities such as boating and mowing the lawn. (*id.*, Ex. 31). S.S. argues the exhibits collectively show the District neither provided N.S. with assistive technology, nor did it provide him with needed vocational instruction. (*Id.* ¶¶ 27-29.)

The Court finds this evidence is not relevant to the question of whether the District provided a FAPE. S.S.'s email merely asks the District to have N.S. bring his iPad home for the summer. (*Id.*, Ex. 28.) S.S. does not express any disapproval in the email of the District's failure to provide N.S. with technology. (*Id.*) As to the evidence of N.S.'s successes after leaving the District, the Court finds these exhibits are not relevant to the question of whether the District provided N.S. with a FAPE while he was enrolled as a student there. *See Bernardsville*, 42 F.3d at 161.

#### 5. Exhibit 32

S.S. contends the Court should consider N.S.'s s middle school transcript on the ground it demonstrates "N.S. had been on the honor roll, [which] would have provided the ALJ with a more complete picture of N.S. and his needs educationally, vocationally, and socially." (ECF No. 104 ¶¶ 31-32, Ex. 32.) The Court does not find N.S.'s eighth grade report card is relevant to the question of whether the District provided N.S. with a FAPE while he was a high school student. Therefore, the Court will not consider Exhibit 32.

### 6. Exhibit 36

S.S. claims the Court should consider several emails sent among District employees and between S.S. and District employees regarding the District's removal of supplemental instruction, including summer instruction. (*Id.*, ¶ 42, Ex. 36.) S.S. argues this evidence shows the District dishonestly portrayed the elimination of the services, not as a cost-saving measure, but as the removal of a courtesy to students. (*Id.* ¶ 42.) She argues the termination of supplemental instruction violated N.S.'s IEP. (*Id.*)

The Court finds Exhibit 36 would be cumulative, as the ALJ acknowledged "the District unilaterally terminated supplemental instruction without amending the IEP." (ECF No. 105-2 at 55.) The ALJ continued: "[T]he District did not subsequently provide for such instruction in the May 2013 IEP for the 2013-14 school year." (*Id.* at 55-56.) The Court finds the ALJ considered the District's removal of supplemental instruction, and the evidence contained in Exhibit 36 is cumulative. Therefore, the Court will not consider Exhibit 36.

### C. Evidence Related to Morgan's Criminal History and the Arrests of Morgan and Uszenski

S.S. seeks to admit several pieces of evidence concerning Morgan's alleged prison term on drug charges before the District hired him, as well as the May 2015 arrests of Morgan and Uszenski. (ECF No. 44 ¶¶ 46, 81, 83.) Uszenski and Morgan were charged with misappropriating District funds after Uszenski directed Morgan to create a fraudulent audit of special services within the district to justify cuts in services to students.[3] (*Id.*) S.S. argues the Court should consider this

---

[3] Exhibits 33 to 35 and 37 to 50 relate to these issues. As S.S.'s arguments in favor of consideration of these documents are consistent, as are Defendants' arguments against allowing the evidence, the Court considers these exhibits jointly. The exhibits include documents related to Morgan's criminal history, his employment history with the District, and the criminal investigation into the fraudulent audit.

evidence because it "illustrate[s] Morgan's character and how he inappropriately treated staff, teachers, parents, and children." (ECF No. 101-2 at 12.) S.S. claims the evidence demonstrates "there was no further oversight of Morgan or his actions regarding N.S." (*Id.*)

Defendants oppose the admission of this evidence on the ground it is impermissible to introduce additional evidence under 20 U.S.C. § 1415(e)(2) to impeach the credibility of witnesses at an administrative hearing. (ECF No. 106 at 13 (citing *Bernardsville*, 42 F.3d at 161 (citing *Egg Harbor Twp. Bd. of Educ. v. S.O., by his Guardian ad litem, R.O.*, No. 90–1043, slip op. at 3 n.1 (D.N.J. Aug. 19, 1992)).) Defendants further argue evidence related to Morgan's fraudulent audit is not relevant. (*Id.* at 16.) Defendants maintain "[t]here is no causal connection or relationship between what services the District did or did not provide to other students and did or did not provide for N.S." (*Id.*) They contend issue of whether Morgan's and Uszenski's actions led to the District's students in general being deprived of a FAPE has no bearing on the ALJ's finding the District provided N.S. with a FAPE. (*Id.*)

The Court finds the evidence concerning Morgan and Uszenski should be considered. The exhibits provide a significant amount of information regarding Morgan's misconduct and intimidation of staff, including those whose decisions affected N.S. (*See* ECF No. 104, Exs. 38-40.) The evidence suggest Morgan ordered District employees to manipulate student IEPs and to eliminate services with no regard for IEP requirements. (*Id.*, Ex. 43.) While the Court must give "due weight" to the ALJ's ruling. *Hendrick Hudson Ctrl. Schl. Dist.*, 458 U.S. at 205-06, the Court notes much of the evidence concerning Morgan and Uszenski was not before the ALJ. *See Oberti by Oberti v. Bd. of Educ. of Borough of Clementon Sch. Dist.*, 995 F.2d 1204, 1222 (3d Cir. 1993) (finding "the district court did not fail to give due weight to the agency proceedings" when "the

court's findings were based largely on new expert testimony that was not before the ALJ"). Therefore, Exhibits 33 to 35 and 37 to 50 should be considered.

## IV. CONCLUSION

For the reasons set forth above, Plaintiffs' Motion to Allow Additional Evidence (ECF No. 101) is **GRANTED IN PART** and **DENIED IN PART**. The Motion is **GRANTED** as to Exhibits 1 to 3, 6 to 8, 26 to 27, 33 to 35, and 37 to 50. The Motion is **DENIED** as to Exhibits 4 to 5, 9 to 25, and 28 to 32. An appropriate order will follow.


Date: March 29, 2018 */s/ Brian R. Martinotti*
**HON. BRIAN R. MARTINOTTI**
**UNITED STATES DISTRICT JUDGE**